**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,<br><br>Petitioner,<br><br>- against -<br><br>MEDIATION AND CIVIL ARBITRATION, INC., D/B/A RAPIDRULING, ZACHARY MEYER, and ANDREW SACHS,<br><br>Respondents. | **Case No. 26-cv-05679-ER** |

# PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND AND FOR AN AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS

LETITIA JAMES
Attorney General of the
State of New York

Christian Reigstad
Christopher L. McCall
Assistant Attorneys General
Bureau of Consumer Frauds & Protection
28 Liberty Street
New York, New York 10005
(212) 416-8321
(212) 416-8365

*Counsel for Petitioner the*
*People of the State of New York*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

RELEVANT BACKGROUND ..... 5

A. The State Court Special Proceeding Asserts Only State Law Claims and Was Commenced in the Forum Specifically Established by New York Law to Hear Such Proceedings ..... 5

B. The State Court Special Proceeding Establishes that Respondents Violated New York Laws By, Among Other Things, Falsely Telling Consumers that Rapid Ruling was a "Neutral" and "Independent" Arbitration Platform When It Was Not ..... 6

C. Respondents Improperly Remove the State Court Special Proceeding by Invoking Ordinary Preemption under the Federal Arbitration Act ..... 11

APPLICABLE LEGAL STANDARDS ..... 12

ARGUMENT ..... 13

I. RESPONDENTS CANNOT SATISFY THEIR BURDEN TO ESTABLISH THAT THIS COURT HAS SUBJECT MATTER JURISDICTION. ..... 13

A. The U.S. Supreme Court Has Foreclosed the Argument that the FAA Completely Preempts State Law Claims ..... 15

B. Respondents Cannot Satisfy Their Burden to Prove "Substantial Question" Jurisdiction ..... 16

1. The FAA Does Not Supply an Essential Element for Any of the Petition's Claims and Thus No Federal Question Is Necessarily Raised ..... 16

2. Removal Will Disrupt the Balance of Federal and State Judicial Responsibilities ..... 19

II. OAG IS STATUTORILY ENTITLED TO REASONABLE ATTORNEYS' FEES AND COSTS IN SEEKING REMAND ..... 22

CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMTAX Holdings 227, LLC v. CohnReznick LLP*,
136 F.4th 32 (2d Cir. 2025). ....................16

*Bernstein Family Ltd. P'ship v. Sovereign Partners, L.P.*,
66 A.D.3d 1 (N.Y. App. Div. 2009) ....................5

*Bryant v. Britt*,
420 F.3d 161 (2d Cir. 2005)....................25

*Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*,
368 F.3d 86 (2d Cir. 2004)....................12

*Calabro v. Aniqa Halal Live Poultry Corp.*,
650 F.3d 163 (2d Cir. 2011)....................22

*Caterpillar Inc. v. Williams*,
482 U.S. 386 (1987)....................2, 14, 15

*Citigroup, Inc. v. Wachovia Corp.*,
613 F. Supp. 2d 485 (S.D.N.Y. 2009)....................23

*City of New York v. Exxon Mobil Corp.*,
154 F.4th 36 (2d Cir. 2025) ....................22, 23

*CMGRP, Inc. v. Agency for the Performing Arts, Inc.*,
689 F. App'x 40 (2d Cir. 2017) ....................23

*Davidson v. Capuano*,
792 F.2d 275 (2d Cir. 1986)....................20

*Domnister v. Exclusive Ambulette, Inc.*,
607 F.3d 84 (2d Cir. 2010)....................17

*Fracasse v. People's United Bank*,
747 F.3d 141 (2d Cir. 2014)....................3, 14

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*,
463 U.S. 1 (1983).................... *passim*

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005).................... *passim*

*Greenidge v. Mundo Shipping Corp.*,,
41 F. Supp. 2d 354 (E.D.N.Y. 1999) ....................23

*Gunn v. Minton*,
568 U.S. 251 (2013)....................3, 16

*Hall Street Assocs., LLC v. Mattel, Inc.*,
552 U.S. 576 (2008)....................19

*Henderson v. Roman Cath. Diocese of Brooklyn*,
No. 23-CV-05707 (ER), 2025 WL 2778087 (S.D.N.Y. Sept. 30, 2025)....................12

*Himmelstein, McConnell, Gribben, Donoghue & Joseph v. Matthew Bender & Co.*,
37 N.Y.3d 169 (2021). ....................10

*In re G.M. LLC Ignition Switch Litig.*,
69 F. Supp. 3d 404 (S.D.N.Y. 2014)....................21

*In re Standard & Poor's Rating Agency Litig.*,
23 F. Supp. 3d 378 (S.D.N.Y. 2014)....................13, 21

*Jacobson v. Wells Fargo Nat'l Bank, N.A.*,
824 F.3d 308 (2d Cir. 2016)....................14

*Karlin v. IVF Am.*,
93 N.Y.2d 282 (1999). ....................10

*Link Motion Inc. v. DLA Piper LLP*,
103 F.4th 905 (2d Cir. 2024) ....................22

*Loans on Fine Art LLC v. Peck*,
No. 2:23-CV-07288 (OEM)(JMW), 2024 WL 4028337 (E.D.N.Y. Sept. 3, 2024) ..........15, 23

*Martin v. Franklin Capital Corp.*,
546 U.S. 132 (2005)....................22, 24, 25

*Nevada v. Bank of Am. Corp.*,
672 F.3d 661 (9th Cir. 2012) ....................21

*New York v. Amazon.com, Inc.*,
550 F. Supp. 3d 122 (S.D.N.Y. 2021)....................17

*New York v. DailyPay, Inc.*,
No. 25-CV-3439 (JGK), 2025 WL 2695712 (S.D.N.Y. Sept. 19, 2025) .................... *passim*

*New York v. Dell, Inc.*,
514 F. Supp. 2d 397 (N.D.N.Y. 2007)....................22

*New York v. Doyle*,
No. 24-CV-6045 (ER), 2025 WL 1863636 (S.D.N.Y. July 7, 2025) ......................................12

*New York v. Early Warning Servs., LLC*,
No. 25-CV-07601 (MMG), 2026 WL 570793 (S.D.N.Y. Feb. 26, 2026).........................17, 24

*New York v. Feldman*,
210 F.Supp.2d 294 (S.D.N.Y. 2002)..........................................................................10

*New York v. MoneyLion Inc.*,
No. 25-CV-4093 (CM), 2025 WL 3154497 (S.D.N.Y. Nov. 12, 2025)............................18, 24

*New York v. Nat'l Gen. Holdings Corp.*,
No. 25-CV-3608 (LAK), 2025 WL 3013095 (S.D.N.Y. Oct. 28, 2025)...........................17, 24

*New York v. Sirius XM Radio, Inc.*,
735 F. Supp. 3d 272 (S.D.N.Y. 2024)..................................................................... *passim*

*People v. Apple Health & Sports Clubs, Ltd., Inc.*,
206 A.D.2d 266 (N.Y. App. Div. 1994) .................................................................5, 20

*People v. Applied Card Sys.*,,
27 A.D.3d 104 (N.Y. App. Div. 2005) ......................................................................10

*People v. Telehublink Corp.*,
301 A.D.2d 1006 (N.Y. App. Div. 2003) .....................................................................6

*Percy v. Oriska Gen. Contracting*,
No. 20 Civ. 6131, 2021 WL 2184895 (E.D.N.Y. May 27, 2021),
*aff'd sub nom. Hall v. Oriska Corp Gen. Contracting*,
No. 21-1564, 2022 WL 17420307 (2d Cir. Dec. 6, 2022)......................................................25

*Qatar v. First Abu Dhabi Bank PJSC*,
432 F. Supp. 3d 401 (S.D.N.Y. 2020).......................................................................20

*Romano v. Kazacos*,
609 F.3d 512 (2d Cir. 2010)..................................................................................14

*State v. Ford Motor Co.*,
74 N.Y.2d 495 (1989) ..........................................................................................18

*State by Tong v. Exxon Mobil Corp.*,
83 F.4th 122 (2d Cir. 2023) ............................................................................ *passim*

*Sullivan v. Am. Airlines, Inc.*,
424 F.3d 267 (2d Cir. 2005)...............................................................................3, 15

*Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co., Inc.*,
116 F.4th 106 (2d Cir. 2024). ....................16

*Tantaros v. Fox News Network, LLC*,
12 F.4th 135 (2d Cir. 2021) ....................16, 17, 19

*Tully Const. Co./A.J. Pegno Const. Co., J.V. v. Canam Steel Corp.*,
No. 13 CIV. 3037 PGG, 2015 WL 906128 (S.D.N.Y. Mar. 2, 2015) ....................19

*Volt Info. Scis., Inc. v. Leland Stanford Jr. Univ.*,
489 U.S. 468 (1989)....................3, 15

*Westchester Cnty. v. Mylan Pharms., Inc.*,
737 F. Supp. 3d 214 (S.D.N.Y. 2024)....................13

**State Statutes**

New York Executive Law
Section 63(12).................... *passim*

New York General Business Law
Section 349.................... *passim*

**Federal Statutes**

Federal Arbitration Act,
9 U.S.C. §§ 1 *et seq*.................... *passim*

28 U.S.C.
Section 1331....................13
Section 1441....................12
Section 1446....................11
Section 1447.................... *passim*

**Rules**

Civil Practice Law and Rules
Section 409....................6
Section 410....................6

**Miscellaneous**

David D. Siegel, *N.Y. Practice* § 547 (4th ed.) ....................5

## INTRODUCTION

This case concerns a special proceeding commenced by a sovereign State, in state court, asserting claims solely under state law, through a unique state procedural mechanism ("State Court Special Proceeding"). It belongs in state court, where it was filed. Yet, Respondents removed the State Court Special Proceeding on baseless grounds as a litigation tactic, because such removal will inevitably delay the swift resolution of the State Court Special Proceeding. This Court cannot and should not countenance such gamesmanship.

Petitioner the People of the State of New York, by Letitia James, Attorney General of the State of New York ("OAG") brought the State Court Special Proceeding on an expedited basis against three New York respondents, Mediation and Civil Arbitration, Inc., d/b/a RapidRuling ("Rapid Ruling"), and two of Rapid Ruling's co-founders, Zachary Meyer, and Andrew Sachs ("Respondents"). As set forth in detail in the verified Petition ("Petition") and accompanying affirmations and exhibits, Rapid Ruling is part of a judgment mill for the merchant cash advance ("MCA") industry that Respondents fraudulently, deceptively, and abusively present as a legitimate arbitration forum. Respondents market Rapid Ruling as a neutral and unbiased arbitration platform that provides businesses and consumers of all types a fair shake. In fact, the fix was in from the very start, when Respondents secretly consulted with a New York-based MCA company to establish Rapid Ruling as a means for quickly enforcing MCA agreements against struggling small businesses. The Petition alleges that Respondents violated New York Executive Law § 63(12) and New York General Business Law § 349 by deceptively, fraudulently, and abusively marketing Rapid Ruling as a neutral and unbiased arbitration platform while concealing that it is a sham system that was created and designed, and now operates, to produce one-sided results in favor of the MCA industry.

The State Court Special Proceeding was commenced in New York State Supreme Court as a special proceeding brought pursuant to Executive Law § 63(12), which expressly designates New York State Supreme Court as the proper forum for such proceedings, and is governed by special procedural rules designed to facilitate an expedited, summary disposition of OAG's claims.

Notwithstanding the purely state-law claims asserted in the Petition, on July 3, 2026, Respondents improperly removed the State Court Special Proceeding to this Court. *See* (ECF No. 5) ("Removal Notice").) The Removal Notice does not dispute that OAG brings claims solely under New York law. (*See* Removal Notice ¶ 1 (noting that the Petition alleges claims "under New York Executive Law, Section 63(12), and General Business Law ('GBL') Article 22-A, Section 349"), ¶ 7 (referencing "the OAG's state-law claims").) The sole basis for federal jurisdiction in Respondents' Removal Notice is the Federal Arbitration Act's ("FAA") purported "impact on" OAG's claims, and specifically Respondents' "contention that federal law preempts the OAG's state law theories of liability." (Removal Notice ¶¶ 8, 10.)

That theory of federal jurisdiction is directly contrary to binding Supreme Court precedent. Under the "well-pleaded complaint rule," "federal jurisdiction exists only when a federal question is presented on the face of the properly pleaded complaint," and thus generally "a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-93 (1987).[1] There are only three exceptions to the well-pleaded complaint rule: (1) where Congress expressly provided for removal of the state law claims, (2) where the state law claims are

[1] Unless otherwise indicated, all internal citations, quotation marks, and alterations have been removed from the cases cited herein.

*completely* preempted, or (3) where the state law rights necessarily raise a disputed and substantial question of federal law—sometimes called "substantial question" jurisdiction. *See Fracasse v. People's United Bank*, 747 F.3d 141, 144 (2d Cir. 2014). Respondents do not argue that Congress has expressly provided for removal of OAG's claims and they cannot possibly demonstrate that either complete preemption or substantial question jurisdiction applies.

As to "complete preemption," the Supreme Court has extended that doctrine of "extraordinary preemptive force" to a minute group comprised of only three federal statutes, and the FAA is not in that group. *See Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005). And although the Removal Notice sweepingly asserts that "the practices of, and rulings by, Rapid [Ruling], as a commercial arbitration forum, are governed by the FAA," (Removal Notice ¶ 8), the Supreme Court has already ruled that "[t]he FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." *Volt Info. Scis., Inc. v. Leland Stanford Jr. Univ.*, 489 U.S. 468, 477 (1989). Thus, to the extent Respondents argue complete preemption, that argument is foreclosed.

After filing their Removal Notice, Respondents appear to have backtracked from a complete preemption argument and attempt to squeeze this case into the "special and small" category described in the Supreme Court's *Grable* and *Gunn* cases where a state-law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance" of federal and state power. *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). That theory is *also* barred by Supreme Court precedent. Respondents' contention that the FAA preempts the Petition's state-law claims is a classic example of a defense, not a federal issue that is necessarily raised, and therefore cannot

support federal jurisdiction. *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 13 (1983) (no federal jurisdiction where "federal law becomes relevant only by way of a defense to an obligation created entirely by state law"). Moreover, permitting removal of these state-law claims, brought by the State, pursuant to a special state procedural mechanism, would profoundly "disturb[] [the] congressionally approved balance of federal and state judicial responsibilities," providing an independent basis for remand. *Grable*, 545 U.S. at 314.

In addition to remanding the State Court Special Proceeding, the Court should award OAG its reasonable attorneys' fees and costs in seeking remand, as expressly authorized by 28 U.S.C. § 1447(c), because (i) Respondents' basis for removal was objectively unreasonable and (ii) a fee award would uphold the core purposes of the fee-shifting provision in the removal statute to deter meritless removals like this one that needlessly delay actions and waste the parties' and judicial resources.

Respondents' removal of the State Court Special Proceeding on the basis of a preemption defense was contrary to what both the Supreme Court and the Second Circuit have described as "settled law" dating back since "1887." *Franchise Tax Bd*, 463 U.S. at 13-14; *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 135 (2d Cir. 2023) ("*Exxon I*"). Courts in this Circuit have awarded fees based on similar baseless attempts to remove an action based on preemption defenses. *See infra*, at p. 23. And fee-shifting is particularly appropriate to deter the recent trend, exemplified by Respondents here, of using meritless removals to obtain months-long delays of state enforcement actions brought in state court by OAG that assert purely state-law claims. Indeed, Respondents' Removal Notice is notable for its tacit acknowledgement of its own impropriety. In the Removal Notice's final paragraph, Respondents purport to "reserve the right

to amend or supplement this Notice of Removal," including as follows: "In the event any questions arise as to the propriety of the removal of this action, [Respondents] expressly request the opportunity to present a brief, oral argument, and/or any further evidence necessary in support of their position that this action is removable." (Removal Notice ¶ 15.) Respondents have it backwards: The arguments and evidence supporting removal must be set forth in the Removal Notice, not *post hac* and only under the threat of fee-shifting. The Court should uphold the core purposes of § 1447(c) and award costs and fees.

## RELEVANT BACKGROUND

### A. The State Court Special Proceeding Asserts Only State Law Claims and Was Commenced in the Forum Specifically Established by New York Law to Hear Such Proceedings

New York has a public policy of protecting its residents from business practices that are fraudulent, illegal, deceptive, misleading, or abusive, and of restraining such business practices from occurring in New York. OAG is charged with enforcing that policy, which is codified in New York statutes including Executive Law § 63(12) and GBL § 349.

Consistent with OAG's role in enforcing the State's public policy, the state legislature has authorized actions pursuant to Executive Law § 63(12) to be brought by special proceeding, which is "intended as an expeditious means for the Attorney General to prevent further injury and seek relief for the victims of business fraud." *People v. Apple Health & Sports Clubs, Ltd., Inc.*, 206 A.D.2d 266, 268 (N.Y. App. Div. 1994). A special proceeding is a unique creature of New York law that is "brought on with the ease, speed, and economy of a mere motion." *Bernstein Family Ltd. P'ship v. Sovereign Partners, L.P.*, 66 A.D.3d 1, 8 (N.Y. App. Div. 2009) (quoting David D. Siegel, *N.Y. Practice* § 547, at 943 (4th ed.)). Special proceedings are governed by Article 4 of New York's Civil Practice Law and Rules ("CPLR"), which requires a court to make a summary determination upon the pleadings, papers, and admissions to the extent that no triable issues of fact

are raised, applying "the same standards that apply to a motion for summary judgment." *People v. Telehublink Corp.*, 301 A.D.2d 1006, 1007 (N.Y. App. Div. 2003); *see* CPLR § 409(b); *see also* CPLR § 410 (issues of material fact raised in a summary proceeding must be tried "forthwith").

### B. The State Court Special Proceeding Establishes that Respondents Violated New York Laws By, Among Other Things, Falsely Telling Consumers that Rapid Ruling was a "Neutral" and "Independent" Arbitration Platform When It Was Not

On June 8, 2026, OAG sought such expedited relief by filing the Petition as a special proceeding in New York State Supreme Court against Respondents pursuant to New York Executive Law § 63(12). The State Court Special Proceeding was commenced by filing, *inter alia*, the verified Petition, three affirmations, 86 exhibits, a notice, and a memorandum of law.

This is a classic case of consumer fraud, deception, and abuse. As described in the verified Petition (ECF No. 5-1 at pp. 2-47 ("Pet.")), Respondents offer arbitration services for MCA companies through an online platform accessible at Rapid Ruling's website, "rapidruling.com." (Pet. ¶¶ 25-26.) Respondents present Rapid Ruling through its website and in communications to the parties using its services as a "neutral" arbitration forum "for attorneys, businesses, and consumers" with a stable of "independent" and "impartial" arbitrators who issue awards after considering evidence and arguments from "both sides." (Pet. ¶¶ 39-45, 70.) The contrast between the picture presented by Respondents and the reality of Rapid Ruling's business model is stark: Respondents designed Rapid Ruling to quickly produce awards in favor of MCA companies following asymmetrical, expedited proceedings that deprive merchants of an opportunity to be heard.

To understand the nefarious nature of Respondents' business model, it is necessary to understand how Rapid Ruling fits into the MCA industry. MCAs are "a form of financing whereby a merchant agrees to pay an MCA company a daily amount supposedly based on a percentage of

the merchant's future daily receivables in exchange for a (often heavily) discounted cash advance." (Pet. ¶ 28.) MCA companies frequently require debtors to sign confessions of judgment, legal instruments that allow for quick entry of judgment by a court in the event of a default. (Pet. ¶ 53.) Non-party LCF Group, Inc., f/k/a Last Chance Funding, Inc. ("LCF"), is a New York-based MCA company that had filed hundreds of confessions of judgment in New York against out-of-state merchants. (Pet. ¶¶ 53, 55.) Beginning in the summer of 2019, in response to a change in state law limiting the use of confessions of judgment in certain cases, LCF looked for alternatives to confessions of judgment and determined that expedited arbitration would be effective; LCF then worked with Respondents Meyer and Sachs, who co-founded and own Rapid Ruling, to fill the "vacuum" or "void" in LCF's collection strategy by establishing an arbitration company: Rapid Ruling. (Pet. ¶¶ 55-58.)

Meyer and Sachs embraced this objective by collaborating with LCF to design Rapid Ruling to facilitate LCF's collection efforts against purportedly defaulting out-of-state merchants, engineering every aspect of Rapid Ruling's arbitration process to deliver fast judgments to MCA companies. (Pet. ¶¶ 56-64.) Meyer and Sachs solicited LCF to propose the first draft of and extensively edit the rules that would govern all arbitrations before Rapid Ruling. (Pet. ¶¶ 85-98.) At LCF's behest, the rules provide that the party responding to the arbitration automatically defaults on all claims if it fails to appear within a matter of days of the initiation of the proceeding. (Pet. ¶ 89.) Respondents also accepted LCF's requests to edit the rules to all but bar small businesses from accessing discovery, (Pet. ¶ 92), and to provide that any final arbitration award sent by Rapid Ruling would be deemed legally delivered even if it was "filtered to a recipient's SPAM filter," (Pet. ¶ 95). This biased ruleset infected every arbitration undertaken by Rapid Ruling.

After founding Rapid Ruling in September 2019—just one month after the enactment of the state-law ban on out-of-state confessions of judgment—Respondents accepted LCF as Rapid Ruling's first (and, for months, only) customer. (Pet. ¶¶ 65-67.) LCF filed thousands of arbitrations governed by the very rules that Respondents had allowed LCF to craft, all to LCF's benefit. (Pet. ¶¶ 66-67.) Respondents then marketed Rapid Ruling's services directly to other MCA companies at industry conferences, promising them fast judgments. (Pet. ¶¶ 75-84.) Rapid Ruling's sole source of revenue was and is the filing and arbitrator fees it collects from its MCA company claimants who pass those costs on to merchants. (Pet. ¶¶ 33-34.)

Respondents controlled all other aspects of the arbitrations to ensure that the results of the supposedly neutral arbitrations were not left to chance. Meyer and Sachs personally served as Rapid Ruling's sole arbitrators for the first two years of Rapid Ruling's existence, despite their collaboration with LCF to design Rapid Ruling's biased rules and their exclusive reliance on LCF and, later, other MCA companies to generate arbitration-related income. (Pet. ¶ 32.) Even after Rapid Ruling hired additional arbitrators, Meyer trained them on "the analysis they should apply in their awards" and provided them with two "sample" awards that each ruled entirely in favor of LCF. (Pet. ¶¶ 107-108.)

The pervasive partiality and bias in establishing Rapid Ruling predictably led to extremely asymmetrical outcomes in the ensuing arbitrations, as Respondents' counsel has conceded. Very few merchants ever appeared in a Rapid Ruling arbitration; of the approximately 3,000 arbitrations Rapid Ruling administered in its first three years of operation, over 97% were uncontested, and Rapid Ruling ruled in favor of the MCA company that initiated the arbitration in almost every single one of them. (Pet. ¶¶ 37, 121-22.) Even when a merchant did manage to appear and timely assert defenses, Respondents' rigged system produced the same outcome. Of the nearly 3,000

matters filed with Rapid Ruling as of March 2023, a merchant appeared and prevailed in a *single matter*: the merchant-respondent received dismissal without prejudice *only* because the MCA company attached the wrong contract to the initial statement of claim it filed with Rapid Ruling. (Pet. ¶ 131.) During that same time period, Rapid Ruling's arbitrators uniformly rejected merchants' defenses and awarded MCA companies the relief they requested, often parroting the analysis reflected in the "sample" awards provided by Meyer, and even copying the same typos. (Pet. ¶¶ 132-34.) During the July 28, 2026 premotion conference before this Court, Respondents' counsel did not dispute the accuracy of OAG's finding (as the Court described it) "that of 3,000 arbitrations that [OAG has] reviewed, the merchant cash advance companies are 2,999 to 1." *See* Declaration of Christopher L. McCall in Support of Petitioner's Motion to Remand and for an Award of Reasonable Attorneys' Fees and Costs ("McCall Decl."), Ex. A (7/28/26 Tr.) at 10:18-11:15 ("I don't dispute that fact, your Honor . . . .").

Based on the extensive evidence set forth in the Petition and accompanying affirmations and exhibits, the Petition asserts state-law causes of action for fraud, deceptive acts and practices, and abusiveness under N.Y. Executive Law § 63(12) and N.Y. General Business Law § 349. (Pet. ¶¶ 141-166.) The Petition seeks injunctive relief, damages, restitution, penalties, disgorgement, an accounting, and costs. (Pet., Demand for Relief ¶¶ a-j.)

To prevail on the fraud claim under N.Y. Executive Law § 63(12), OAG must prove that Respondents engaged in repeated and persistent fraud, as those terms are defined by the statute. Executive Law § 63(12) broadly defines fraud to include "any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense, false promise or unconscionable contractual provisions." The statute defines "repeated" as the "repetition of any separate and distinct fraudulent or illegal act, or conduct which affects more than one person," and

defines "persistent" as the "continuance or carrying on of any fraudulent or illegal act of conduct." *Id*. Neither definition is predicated on violation of any federal law.

To prevail on the illegality claim under N.Y. Executive Law § 63(12), OAG must prove that Respondents engaged in repeated and persistent illegality. As to the "illegality" prong of the statute, courts have repeatedly found that a violation of state, federal, or local law constitutes illegality within the meaning of Executive Law § 63(12). *See New York v. Feldman*, 210 F.Supp.2d 294, 300 (S.D.N.Y. 2002) ("Violations of State laws, as well as violations of Federal laws or regulations, can constitute fraud or illegality within the meaning of Section 63."). The Petition asserts illegality claims premised solely on violations of state law; namely, deception and abusiveness under N.Y. General Business Law § 349(a). (*See* Pet. ¶¶ 146-56.)

New York General Business Law § 349(a) declares unlawful, *inter alia*, "deceptive, or abusive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." Section 349(a) is construed broadly to effectuate its remedial purpose and applies to "virtually all economic activity." *Karlin v. IVF Am.*, 93 N.Y.2d 282, 290 (1999). The statute protects the public against all forms of deceptive, misleading or abusive practices, including those aimed at professionals or businesses. *Himmelstein, McConnell, Gribben, Donoghue & Joseph v. Matthew Bender & Co.*, 37 N.Y.3d 169, 177-78 (2021). Acts or practices are deceptive under GBL § 349 if they are likely to mislead a reasonable person "acting reasonably under the circumstances." *People v. Applied Card Sys.*, 27 A.D.3d 104, 107 (N.Y. App. Div. 2005). Acts or practices are abusive under GBL § 349 if, among other things, they take "unreasonable advantage" of a person's (i) lack of understanding of the risks, costs, or conditions of a product or service, (ii) the inability of a person to protect their own interests in selecting or using a product or service, or (iii) the reasonable reliance on the person engaging in the act or practice to act in

their interests. N.Y. Gen. Bus. L. § 349(a)(2). Neither deception nor abusiveness under the statute requires proof of a violation of any federal law as an element of the claim.

### C. Respondents Improperly Remove the State Court Special Proceeding by Invoking Ordinary Preemption under the Federal Arbitration Act

Pursuant to New York law, Respondents' answer to the Petition was due on June 23, 2026 (seven days before the June 30, 2026 return date). (*See* ECF No. 5-12 at pp. 37-39 (Notice of Petition filed in State Court Special Proceeding).) Respondents requested an extension of their time to respond, and, as a professional courtesy, OAG granted a generous extension of nearly five weeks, giving Respondents until July 28, 2026 to respond to the Petition. The parties submitted a stipulation to the State Court with the extended deadline and a briefing schedule on June 10, 2026, which the State Court so-ordered on June 15, 2026. *See* McCall Decl., Ex. B (June 10, 2026 stipulation) & Ex. C (June 15, 2026 order).

On July 3, 2026—the day before the Fourth of July and nearly a month after the State Court Special Proceeding was filed—Respondents removed the State Court Special Proceeding to this Court. (ECF No. 1.) On July 9, 2026, OAG submitted a letter pursuant to Rule 2.A.ii. of this Court's Individual Practices to request a pre-motion conference so that OAG could move to remand this case for lack of subject matter jurisdiction and for costs and attorneys' fees under 28 U.S.C. § 1447(c). (ECF. No. 7.) The Court granted the request on July 13, 2026 and scheduled the conference for July 28, 2026. (ECF. No. 9.) The following day, Respondents submitted a letter setting forth their position in opposition to the anticipated motion. (ECF No. 11.)

Days earlier, on July 10, 2026, Respondents submitted a letter to the Court requesting, with OAG's consent,[2] an order staying Respondents' deadline to respond to the Petition pending a ruling on OAG's anticipated motion to remand. (ECF No. 8.) Notably, this letter did not mention that OAG had already agreed to a five-week extension of Respondents' deadline. By order dated July 14, 2026, the Court stayed Respondents' deadline to respond to the Petition pending a ruling on the instant motion. (ECF No. 10.)

The parties attended the pre-motion conference before the Court on July 28, 2026 at which the Court authorized OAG to file the instant motion to remand and for costs and fees and set a briefing schedule for the motion (July 29, 2026 minute entry.)

## APPLICABLE LEGAL STANDARDS

Respondents removed the State Court Special Proceeding pursuant to 28 U.S.C. § 1441(a), which provides that "a civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." (Removal Notice ¶ 5.) Federal courts are courts of limited jurisdiction, and on a motion for remand, "the defendant bears the burden of demonstrating the propriety of removal," *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004), and "[f]ederal courts must strictly construe the federal removal statute, resolving all doubts in favor of remand." *Henderson v. Roman Cath. Diocese of Brooklyn*, No. 23-CV-05707 (ER), 2025 WL 2778087, at *4 (S.D.N.Y. Sept. 30, 2025) (Ramos, D.J.); *see also New York v. Doyle*, No. 24-CV-6045 (ER), 2025 WL

[2] OAG consented to this extension only to avoid exacerbating the delays and inefficiencies caused by Respondents' meritless removal. Absent an extension, the parties would need to fully brief a motion to dismiss under federal pleading standards before the Court determined whether it has subject matter jurisdiction over the case.

1863636, at *2 (S.D.N.Y. July 7, 2025) (Ramos, D.J.) ("In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability.").

As one Court in the Southern District explained in a recent decision remanding an improperly-removed consumer protection action brought by OAG, this burden is a heavy one:

> Out of respect for the limited jurisdiction of the federal courts and the rights of states, the Court must construe the removal statute narrowly, resolving any doubts against removability. Courts in this District have observed that "[t]he presumption against federal jurisdiction is especially strong in cases ... involving States seeking to vindicate quasi-sovereign interests in enforcing state laws and protecting their own citizens from deceptive trade practices and the like."

*New York v. DailyPay, Inc.,* No. 25-CV-3439 (JGK), 2025 WL 2695712, at *2 (S.D.N.Y. Sept. 19, 2025) (citing *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 385 (S.D.N.Y. 2014) and *New York v. Sirius XM Radio, Inc.,* 735 F. Supp. 3d 272, 276 (S.D.N.Y. 2024)). A court that orders remand "may require payment of just costs and actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

## <u>ARGUMENT</u>

### I. RESPONDENTS CANNOT SATISFY THEIR BURDEN TO ESTABLISH THAT THIS COURT HAS SUBJECT MATTER JURISDICTION.

Respondents' Removal Notice invokes federal question jurisdiction under 28 U.S.C. § 1331, which creates federal jurisdiction for cases "arising under" federal law. (Removal Notice ¶ 5.) The sole federal question identified in the Removal Notice is Respondents' "contention that federal law," specifically the Federal Arbitration Act, "preempts the OAG's state law theories of liability." (Removal Notice ¶¶ 8, 10.) At this stage, Respondents may not amend or supplement that sole removal ground. *See Westchester Cnty. v. Mylan Pharms., Inc.*, 737 F. Supp. 3d 214, 229 n.12 (S.D.N.Y. 2024) (a defendant "may not amend a notice of removal after thirty days to state a

new ground for removal … let alone raise new grounds for removal for the first time in an opposition brief to a motion to remand").

Whether an action arises under federal law is "governed by the 'well-pleaded-complaint rule'" that jurisdiction "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Williams*, 482 U.S. at 392. Under this rule, OAG is "the master" of the Complaint and may choose "to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available." *Romano v. Kazacos*, 609 F.3d 512, 518 (2d Cir. 2010); *see Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016) (federal question jurisdiction "is invoked by and large by plaintiffs pleading a cause of action created by federal law").

Here, it is undisputed that OAG brings claims exclusively under state law, specifically New York Executive Law § 63(12) and General Business Law § 349. (*See* Removal Notice ¶ 1 (noting that the Petition alleges claims "under New York Executive Law, Section 63(12), and General Business Law ('GBL') Article 22-A, Section 349"), ¶ 7 (referencing "the OAG's state-law claims").) Thus, federal question can exist only if Respondents establish an exception to the well-pleaded complaint rule applies.

There are only three such exceptions: "first, if Congress expressly provides, by statute, for removal of state law claims"; "second, if state law claims are completely preempted by federal law"; and "third, in certain cases if the vindication of a state law right necessarily turns on a question of federal law"—sometimes called "substantial question" jurisdiction. *Fracasse*, 747 F.3d at 144. Here, Respondents do not (and could not) argue that Congress has expressly provided for removal of OAG's claims, and Respondents cannot meet their heavy burden of demonstrating that complete preemption or substantial question jurisdiction applies.

### A. The U.S. Supreme Court Has Foreclosed the Argument that the FAA Completely Preempts State Law Claims

As a threshold matter, it is not entirely clear if Respondents claim complete preemption. While the Removal Notice asserts that "the practices of, and rulings by, Rapid [Ruling], as a commercial arbitration forum, are governed by the FAA," and states that "it is Defendants' contention that federal law preempts the OAG's state law theories of liability against Defendants," Respondents' July 14, 2026 letter responding to OAG's request for a pre-motion conference focuses exclusively on substantial question jurisdiction. (*Compare* Removal Notice ¶¶ 8, 10*, with* ECF No. 11.) To the extent Respondents do rely on complete preemption, their argument is foreclosed by binding Supreme Court precedent.

The Supreme Court has recognized as "settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Williams*, 482 U.S. at 393. Rather, federal jurisdiction exists only if a federal statute has "such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims—i.e., completely preempted." *Sullivan*, 424 F.3d at 272. The Supreme Court has found only three statutes "to have the requisite extraordinary preemptive force to support complete preemption," *see id.*, of which the FAA is not one.

On the contrary, the Supreme Court has held that the FAA "contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." *Volt*, 489 U.S. at 477. Indeed, the law is so clear that the FAA does not completely preempt state law that a District Court recently described as "baseless" the argument that complete preemption applies to the FAA. *See Loans on Fine Art LLC v. Peck*, No. 2:23-CV-07288

(OEM)(JMW), 2024 WL 4028337, at *4 (E.D.N.Y. Sept. 3, 2024) ("Defendants cite no authority supporting the proposition that complete preemption similarly applies to the FAA, nor has this Court identified case law that supports [that] baseless contention.").

Thus, Respondents cannot meet their heavy burden of establishing complete preemption.

### B. Respondents Cannot Satisfy Their Burden to Prove "Substantial Question" Jurisdiction

Respondents have similarly failed to demonstrate the existence of substantial question jurisdiction, which exists where a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. All four requirements must be met to establish jurisdiction under this test. *Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co., Inc.*, 116 F.4th 106, 115 (2d Cir. 2024). As the Second Circuit recently observed, only a "slim category" of cases will qualify. *AMTAX Holdings 227, LLC v. CohnReznick LLP*, 136 F.4th 32, 41 (2d Cir. 2025). Here, Respondents cannot satisfy the first or fourth elements.

#### 1. The FAA Does Not Supply an Essential Element for Any of the Petition's Claims and Thus No Federal Question Is Necessarily Raised

The case law is clear that for a federal issue to be "necessarily raised, the mere *presence* of a federal issue in a state cause of action is insufficient; the pertinent question of federal law must be a *necessary element* of one of the well-pleaded state claims." *Exxon I*, 83 F.4th at 140. In other words, Respondents "must point to a necessary element of proving liability under [the state-law claims] that is affirmatively premised on [their] violation of," and "could not be resolved without applying," a federal rule of decision. *Id; see also id.* (removing party "cannot establish *Grable* jurisdiction simply by gesturing toward ways in which 'this case' loosely 'implicates' the same subject matter" as a federal law). In *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 141-45

(2d Cir. 2021), for example, the Second Circuit found that the question of preemption under the Federal Arbitration Act "necessarily" arose for purposes of substantial question jurisdiction, but only because that issue was expressly "embed[ded] ... into the operative provision" of the state-law cause of action, which prohibited certain contractual provisions "[e]xcept where inconsistent with federal law," such that disproving preemption constituted an "essential element" of the plaintiff's claim.

In contrast, here the Removal Notice does not identify any federal law or duty comprising an essential element of the Petition's state-law claims, nor could it. The Petition asserts claims for violations of *New York* laws of general application prohibiting deceptive, fraudulent, and abusive conduct, which are premised on violations of *New York* state-law duties not to defraud, deceive, and abuse consumers and businesses. *See supra,* at pp. 9-11 (describing claims). Thus, proving liability under the purely state-law claims in the Petition would not require a court to apply any federal law. *See New York v. Early Warning Servs., LLC*, No. 25-CV-07601 (MMG), 2026 WL 570793, at *3-4 (S.D.N.Y. Feb. 26, 2026) (finding federal law does not provide not a "necessary element" of proving liability for OAG's fraud claims under New York Executive Law § 63(12), and thus no federal issue is necessarily raised); *see also New York v. Nat'l Gen. Holdings Corp.*, No. 25-CV-3608 (LAK), 2025 WL 3013095, at *2 (S.D.N.Y. Oct. 28, 2025) (distinguishing *Tantaros* and remanding case where the "issue of preemption of [OAG's] enforcement authority … is not embedded into the operative provision of the statutes."). Respondents' preemption argument under the Federal Arbitration Act is therefore "not necessarily raised but [is] rather relevant only by way of a defense." *New York v. Amazon.com, Inc.*, 550 F. Supp. 3d 122, 133 (S.D.N.Y. 2021) (quoting *Franchise Tax Bd*, 463 U.S. at 13) (remanding case removed based on preemption defense); *Domnister v. Exclusive Ambulette, Inc.*, 607 F.3d 84, 88 (2d Cir. 2010)

("Because federal preemption is a defense to the plaintiff's suit and does not appear on the face of the complaint, a defendant generally may not remove an action on the basis of federal preemption.").

During the July 28, 2026 premotion conference, Respondents' counsel incorrectly claimed that the Petition seeks "a blanket vacatur of every award issued by" Rapid Ruling, which "raises issues" under the FAA. *See* McCall Decl., Ex. A (7/28/26 Tr.) at 18:6-19:3. That argument fails on multiple levels. To begin, any such "remedial issues" are not "necessarily raised by the Petition because a court could potentially resolve the case without ever reaching them." *DailyPay*, 2025 WL 2695712, at *6 (issue of availability of federal civil penalties for state-law violations was not "necessarily raised"). That is because "there has been no finding of liability against [Respondents] yet [and] it is unclear at this point whether any remedies will ever be ordered." *Id.*; *see also New York v. MoneyLion Inc.*, No. 25-CV-4093 (CM), 2025 WL 3154497, at *3 (S.D.N.Y. Nov. 12, 2025) (same). Moreover, the Petition does not seek vacatur of any awards; it seeks equitable remedies such as restitution and disgorgement that could take any number of forms in the Court's broad remedial discretion including, for example, repayment of filing fees or arbitration fees. *See* Pet., Demand for Relief ¶¶ a-j (identifying the relief sought in the Petition); *see also State v. Ford Motor Co.*, 74 N.Y.2d 495, 502 (1989) ("[a]n application by the Attorney-General for remedial orders under [Section 63(12)] is addressed to the sound judicial discretion of the court"). Thus, even at the remedial stage, the purported preemption "issues" that Respondents hypothesize could arise are not "necessarily raised." And even if FAA preemption issues are ultimately raised at the remedial stage, they would, again, be "relevant only by way of a defense" asserted by Respondents, which cannot support federal jurisdiction. *Franchise Tax Bd*, 463 U.S. at 13.

Respondents also assert that the FAA would have an unspecified "impact" on the State Court Special Proceeding, (Removal Notice ¶¶ 8), but this vague and unsupported assertion is precisely the type of "speculative possibility that a federal question may arise at some point in the proceeding" that the Second Circuit has held is insufficient to establish jurisdiction in federal court. *Tantaros*, 12 F.4th at 141. Indeed, Respondents' attempt to invoke jurisdiction based on the FAA is particularly misguided since the FAA itself does not even provide federal courts with independent subject matter jurisdiction. *See Tully Const. Co./A.J. Pegno Const. Co., J.V. v. Canam Steel Corp*., No. 13 CIV. 3037 PGG, 2015 WL 906128, at *4 n.4 (S.D.N.Y. Mar. 2, 2015) ("While the FAA permits vacatur of an arbitration award, it does not provide federal courts with an independent grounds for jurisdiction."); *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008) ("As for jurisdiction over controversies touching arbitration, the [FAA] does nothing, being something of an anomaly in the field of federal-court jurisdiction in bestowing no federal jurisdiction but rather requiring an independent jurisdictional basis.").

### 2. Removal Will Disrupt the Balance of Federal and State Judicial Responsibilities

Even apart from Respondents' failure to satisfy the "necessarily raised" element above, remand is separately warranted because exercising federal jurisdiction over a case brought by a state in that state's court, to enforce state anti-fraud and consumer protection laws, pursuant to a special state procedural mechanism would profoundly "disturb[] [the] congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

"Because arising-under jurisdiction to hear a state-law claim always raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress, the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal

jurisdiction." *Qatar v. First Abu Dhabi Bank PJSC*, 432 F. Supp. 3d 401, 420 (S.D.N.Y. 2020) (quoting *Grable*, 545 U.S. at 314) (granting motion to remand). "In other words, courts have federal jurisdiction under *Grable* only if exercising 'jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts.'" *Id.* (quoting *Grable*, 545 U.S. at 313). Several aspects of this case make the exercise of federal jurisdiction particularly disruptive to the "balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

For one, the State brought this lawsuit as a special proceeding pursuant to Executive Law § 63(12), which is "intended as an expeditious means for the Attorney General to prevent further injury and seek relief for the victims of business fraud," *Apple Health*, 206 A.D.2d at 268. As the Second Circuit has explained, "the role and purposes of the 'special proceeding' in New York procedure" are unique and "differ[] from a civil action in several ways," including that it is "designed to facilitate a 'summary disposition' of the issues presented" with "the ease, speed, and inexpensiveness of a mere motion" by, among other things, establishing "a trial calendar preference" and barring third party practice or intervention absent leave of court. *Davidson v. Capuano*, 792 F.2d 275, 280 (2d Cir. 1986). Courts in this District have repeatedly recognized that it would be inappropriate to exercise federal jurisdiction over a "consumer-protection lawsuit," such as this one, that is brought by the State using "procedural mechanisms that are uniquely available to it in a special proceeding in a state forum to obtain expeditious relief." *Sirius*, 735 F. Supp. 3d at 281; *DailyPay*, 2025 WL 2695712, at *8 (same).

In addition, accepting Respondents' theory of removal—that OAG's state-law claims are subject to federal jurisdiction because of the supposed preemptive "impact" of the FAA (Removal Notice ¶ 8)—would disrupt the settled division of labor between state and federal courts. *Qatar*, 432 F. Supp. 3d at 420. Under that theory, *any* state enforcement action would be removable if the

defendant can identify *any* federal statute covering the same general subject matter and that might have some unspecified preemptive "impact" on the claims. Given the breadth of federal law, Respondents' theory of federal jurisdiction would swallow virtually every state consumer protection action—even though consumer protection is "an area traditionally regulated by the States." *In re Standard & Poor's*, 23 F. Supp. 3d at 399 (removal of state consumer protection claim would disturb the federal-state balance). There can be no doubt that such result would have "far more than a 'microscopic effect on the federal-state division of labor.'" *In re G.M. LLC Ignition Switch Litig.*, 69 F. Supp. 3d 404, 415 (S.D.N.Y. 2014) (quoting *Grable*, 545 U.S. at 315).

Indeed, courts have consistently held that assuming jurisdiction even over state enforcement actions that—unlike this one—*are* affirmatively predicated on federal law would materially burden federal courts. Many state statutes have federal analogues, and it is common for states to pursue concurrent claims in a single forum. As the *In re G.M.* Court held: It "is not the 'rare' state consumer protection suit that involves alleged violations of federal law; instead, 'state courts frequently handle state-law consumer protection suits that refer to or are predicated on standards set forth in federal statutes.'" 69 F. Supp. 3d at 415 (quoting *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012)); *see also Sirius*, 735 F. Supp. 3d at 282 (remanding state enforcement action partially predicated on federal statute because, *inter alia*, accepting jurisdiction "could meaningfully increase the number of cases that would be filed in federal court."). Opening the federal-court doors to this and similar actions would "materially affect, or threaten to affect, the normal currents of litigation" by diverting suits to federal court. *Grable*, 545 U.S. at 319.

Finally, considerations of comity that are central to this element are at their "zenith where, as here, the suit was brought by a State itself." *In re G.M.*, 69 F. Supp. 3d at 409; *DailyPay,* 2025 WL 2695712, at *8 (finding removal "would be particularly problematic" where "the action was

brought by the State itself"). In her Petition, the Attorney General, as the chief law enforcement officer for the State, brought this action in state court to enforce the state's core anti-fraud and consumer protection laws, and the Attorney General alleges only causes of action under these New York statutes. Resolutions of any disputes over the scope of those statutes should be heard in state court. *See Link Motion Inc. v. DLA Piper LLP*, 103 F.4th 905, 916 (2d Cir. 2024) ("the established federal-state balance expects" that cases concerning areas of traditional state regulation will "be heard in state court"); *New York v. Dell, Inc.*, 514 F. Supp. 2d 397, 401 (N.D.N.Y. 2007) (remand proper to not "unreasonably strip the state of judicial responsibility" even were "some analysis of federal law was necessary").

## II. OAG IS STATUTORILY ENTITLED TO REASONABLE ATTORNEYS' FEES AND COSTS IN SEEKING REMAND

The removal statute "expressly permits an award of attorney's fees" to the party seeking remand. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 134 (2005); 28 U.S.C. § 1447(c). "The law does not require that a removal be made in bad faith to warrant an award of fees," nor does it "require a finding of frivolousness." *City of New York v. Exxon Mobil Corp.*, 154 F.4th 36, 50 & n.8 (2d Cir. 2025) ("*Exxon II*"). Rather, courts may award fees under § 1447(c) "where the removing party lack[s] an objectively reasonable basis for seeking removal." *Martin*, 546 U.S. at 141. That test is satisfied where removal was barred by clearly established law. *Calabro v. Aniqa Halal Live Poultry Corp.*, 650 F.3d 163, 166 (2d Cir. 2011) (affirming fee award where removal was barred by "well-established" application of the well-pleaded-complaint rule).

As discussed above, the sole argument for federal jurisdiction in respondents' Notice rests on their "contention that federal law preempts the OAG's state law theories of liability," (Removal Notice ¶ 10), and the Supreme Court and the Second Circuit have both squarely held that precise argument is contrary to "settled law" dating back to "1887." *Franchise Tax Bd*, 463 U.S. at 14;

*Exxon I*, 83 F.4th at 135. When it comes to removal, there are few propositions more clearly established than that "a case may *not* be removed to federal court on the basis of a federal defense, including the defense of preemption." *Franchise Tax Bd*, 463 U.S. at 14; *accord Exxon I*, 83 F.4th at 135 ("the Supreme Court has left no doubt that a case may not be removed to federal court" based on "the defense of ordinary preemption").

Consistent with that settled rule, courts have ordered statutory fee-shifting when confronted with similar attempts to manufacture federal jurisdiction based on a federal preemption defense. *See Citigroup, Inc. v. Wachovia Corp.*, 613 F. Supp. 2d 485, 494-97 (S.D.N.Y. 2009) (awarding fees for improvident removal based on contention that provision in federal bank bailout legislation preempted state-law claims); *Greenidge v. Mundo Shipping Corp.*, 41 F. Supp. 2d 354, 357-59 (E.D.N.Y. 1999) (same where defendant claimed preemption based on federal shipping statute). Indeed, in *Loans on Fine Art LLC*, the Court granted the plaintiff leave to submit a fee application after the defendant removed based on the preemptive effect of the FAA, calling that jurisdictional argument "baseless." 2024 WL 4028337, at *3-5. The result should be no different here—especially since Respondents implicitly recognized the baselessness of their jurisdictional arguments in the Removal Notice by requesting the opportunity to supplement "[i]n the event any questions arise as to the propriety of the removal of this action." (Removal Notice ¶ 15.)

Even if the Court could discern an objectively reasonable basis for removal in the Notice, it still retains discretion to award fees in "unusual circumstances" for reasons "faithful to the purposes of awarding fees under Section 1447(c), which include disincentivizing actions that delay resolution of the case, impose additional costs on both parties, and waste judicial resources." *CMGRP, Inc. v. Agency for the Performing Arts, Inc.*, 689 F. App'x 40, 41 (2d Cir. 2017) (summary order); *Exxon II*, 154 F.4th at 47-48 (affirming fee award even where an objectively

reasonable removal ground existed). Those principles are squarely implicated here. Respondents filed their meritless Removal Notice shortly before the statutory removal deadline, after having already obtained a generous extension to respond to the Petition, then upon removal they immediately sought to extend that deadline indefinitely. Respondents' gamesmanship is plainly designed to delay these proceedings and forestall accountability for their years-long fraudulent, deceptive, and abusive conduct.

That gamesmanship, moreover, follow a clear playbook increasingly deployed by defendants and respondents to delay enforcement actions brought by OAG asserting purely state-law claims. In the past year, these parties have repeatedly removed such cases and courts in this District have uniformly remanded them based on straightforward application of the well-pleaded complaint rule. *Early Warning*, 2026 WL 570793, at *4; *MoneyLion*, 2025 WL 3154497, at *5; *Nat'l Gen.*, 2025 WL 3013095, at *4; *DailyPay*, 2025 WL 2695712, at *8. Despite OAG's success in obtaining remand, the simple act of removal resulted in months-long delays in each case given the need for the parties to fully brief a remand motion and for the Court to consider and decide it. *Early Warning,* 2026 WL 570793, at *4 (five months from removal to remand order); *MoneyLion*, 2025 WL 3154497, at *5 (six months); *Nat'l Gen.*, 2025 WL 3013095, at *4 (six months); *DailyPay*, 2025 WL 2695712, at *8 (five months).

As the Supreme Court recognized in *Martin*, this "process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources." 546 U.S. at 140. These delays and costs are particularly problematic where, as here, defendants remove a case brought "by the State to enforce its own consumer-protection laws through a special proceeding pursuant to a state statute that specifically selects the New York State Supreme Court as the proper forum for such a

suit," and which provides the State "procedures designed to facilitate a summary disposition of the issues presented." *DailyPay*, 2025 WL 2695712, at *8. Ordering remand absent a fee award would effectively reward Respondents with a significant delay of this summary proceeding while imposing no costs on them for a meritless removal. And that result would incentivize future defendants to continue following the delay-by-removal playbook in future state-law enforcement actions, including special proceedings such as this one, thereby "delay[ing] resolution of the case[s]" and "wast[ing] judicial resources." *Martin*, 546 U.S. at 140. The Court should uphold the core purposes of § 1447(c) and award costs and fees.

If the Court determines a fee award is warranted, OAG respectfully requests that the Court immediately issue a remand order and retain jurisdiction solely for purposes of resolving the appropriate amount of fees and costs. *See Bryant v. Britt*, 420 F.3d 161, 165 (2d Cir. 2005) ("a district court has jurisdiction to resolve a motion for fees and costs under § 1447(c) after a remand order has issued"). The attorneys working on this matter on behalf of OAG are tracking their time spent litigating over the removal and will be prepared to submit a fee application promptly. *See Percy v. Oriska Gen. Contracting*, No. 20 Civ. 6131, 2021 WL 2184895, at *9-10 (E.D.N.Y. May 27, 2021) (ordering remand, finding remanding parties are entitled to fees and costs, and instructing them to submit a fee application), *aff'd sub nom. Hall v. Oriska Corp Gen. Contracting*, No. 21-1564, 2022 WL 17420307 (2d Cir. Dec. 6, 2022).

## CONCLUSION

For the foregoing reasons, OAG respectfully requests that the Court grant OAG's motion to remand this case and award reasonable attorneys' fees and costs to OAG.

Dated: August 14, 2026

Respectfully submitted,

LETITIA JAMES
Attorney General of the State of New York

By: ____________________________________
Christian Reigstad
Christopher L. McCall
Assistant Attorneys General
Bureau of Consumer Frauds & Protection
28 Liberty Street
New York, New York 10005
Telephone: (212) 416-8321
(212) 416-8365
Email: christian.reigstad@ag.ny.gov
christopher.mccall@ag.ny.gov

**CERTIFICATION**

CHRISTOPHER L. MCCALL, an attorney duly admitted in the State of New York and authorized to practice before this Court, certifies under Local Civil Rule 7.1(c) as follows:

1. I am an Assistant Attorney General assigned to the New York State Office of the Attorney General's Bureau of Consumer Frauds and Protection.

2. The foregoing Memorandum of Law complies with the page and word count limits set forth in Local Civil Rule 7.1(c) and Rule 2(B)(i) of the Individual Practices of Judge Edgardo Ramos as it contains 25 pages and 8,116 words excluding the caption, table of contents, table of authorities, and signature block, as indicated by the "Word Count" feature of Microsoft Word.

Dated: August 14, 2026
New York, New York

______________________________
Christopher L. McCall